Filed 7/17/14  In re N.L. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re N.L. et al., Persons Coming Under the Juvenile Court Law. | B252328 |
| _____ | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. DK00260) |
| Plaintiff and Respondent, | |
| v. | |
| M.L., | |
| Defendant and Appellant. | |

APPEAL from a judgment and orders of the Superior Court of Los Angeles County, Carlos E. Vasquez, Judge.  Affirmed.

Deborah Dentler, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

_____

M.L. (mother) appeals from the juvenile court's judgment of October 16, 2013 declaring N.L. and S.H. (daughters), and J.R. and D.R. (sons), dependents of the court under Welfare and Institutions Code section 360.[1] She contends: substantial evidence does not support the sustained allegations that daughters come within the court's jurisdiction under section 300, subdivisions (b) and (d); and the order declaring daughters dependents of the court was an abuse of discretion. We affirm.

## STATEMENT OF FACTS AND PROCEDURE

N. was born in 1997, S. in 1999, J. in 2000, and D. in 2002.[2] They lived with mother. Mother's boyfriend, Walter, resided in the home in 2011 and 2012.[3] Mother worked outside the home and owned a business with Walter that Walter managed. Walter worked from home. Walter had a history of sexually molesting children: in 2004, he molested his nine-year-old former brother-in-law.

Walter sexually molested D. numerous times during the summer of 2012. Walter would walk around the house in his boxer shorts after showering and tell D. to go into the bedroom, where Walter would pull down his underwear and hug D. Walter sodomized D. on four separate occasions and had D. orally copulate Walter on six separate occasions. Walter exposed his penis to D. In October 2012, when he got into trouble at school for sexually acting out, D. disclosed the abuse and the matter was referred to the Department. Walter denied he molested D., although he acknowledged he would hug D. while wearing his boxer shorts. He did not acknowledge D.'s feelings or empathize with him.

---

[1] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.
[2] Each child had a different father.
[3] Walter and mother were not married to each other.

Walter moved to Alaska. Mother participated in individual and family therapy which included awareness of sexual abuse and creating emotional support for D. Walter returned in May 2013. As mother did not believe D.'s allegations, needed Walter's financial support, and was in love with Walter, she continued their romantic and business relationship. Mother allowed Walter to have access to the children, including allowing him to sleep in the family home and do things together as a family. N., S., and J. trusted Walter and were fond of him. They, as well as mother, under-reported the amount of contact they had with Walter. D. was afraid of Walter. He thought mother believed his allegation that Walter molested him, and did not understand why mother was still involved with Walter after what Walter had done to him. Feeling hurt by, and in conflict over, the fact mother allowed Walter back into her life, D. acted out at home and at school, but mother denied that Walter's involvement with the family was harmful to D. Mother denied her continued involvement with Walter was teaching D. the lesson that what Walter did to him was okay. Although D.'s father had long been actively involved in D.'s life in a positive way, mother did not let D. visit with his father, because she blamed him for D.'s accusations.

In June 2013, mother and the Department agreed to a safety plan which required mother to prevent Walter from having contact with the children. Walter was upset by this restriction. He wanted to go back to being a normal part of the family. His "goal [was] to continue to be around mother and the children." D. consistently stated Walter sexually abused him; he never recanted. Mother continued to believe Walter was not the perpetrator and to blame D.'s father for the allegations. Mother maintained her romantic and business relationship with Walter.

Concerned about mother's ability to protect the children, the Department filed a section 300 petition on August 2, 2013.

On October 16, 2013, daughters were declared dependents of the court based on sustained allegations under section 300, subdivisions (b) (risk of serious physical harm from mother's failure to protect) and (d) (risk of sexual abuse from mother's failure to protect) of a first amended petition.[4] In counts b-1 and d-1, the court found that, in 2012, mother's male companion repeatedly sexually abused D., mother knew of the sexual abuse and failed to protect, and mother allowed the companion access to D.; and the companions' sexual abuse of D. and mother's failure to protect place daughters at risk of physical harm and sexual abuse. In counts b-2 and d-2, the court found the male companion sexually abused his nine year-old brother-in-law, which place daughters at risk of physical harm. Daughters were placed in home of parent-mother, and mother was ordered to participate in individual counseling to address sex abuse awareness and other case issues.

## DISCUSSION

*Substantial evidence.*

Mother does not challenge the findings that Walter repeatedly sexually abused D. during 2012, mother knew of the abuse and failed to protect, mother allowed Walter to have access to D., and the sexual abuse of D. and mother's failure to protect place sons at risk of physical harm and sexual abuse. She does not challenge the finding Walter sexually abused his nine year-old brother-in-law which places sons at risk of harm. Her sole contention is substantial evidence does not support the findings under section 300, subdivisions (b) and (d) that daughters were at risk of sexual abuse. We disagree with the contention.

---

[4] Sons, too, were declared dependents of the court based on the same sustained allegations. Mother does not challenge dependency jurisdiction over sons.

" 'In reviewing a challenge to the sufficiency of the evidence supporting the jurisdictional findings and disposition, we determine if substantial evidence, contradicted or uncontradicted, supports them. "In making this determination, we draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. [Citations.] ' "[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find [that the order is appropriate]." ' [Citation.]" (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321.)' (*See In re Angelia P.* (1981) 28 Cal.3d 908, 924.)" (*In re I.J.* (2013) 56 Cal.4th 766, 773.) Thus, the pertinent inquiry is whether substantial evidence supports the finding, not whether a contrary finding might have been made. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

Section 300, subdivision (b), in pertinent part, describes a child who "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . ."

Section 300, subdivision (d) describes a child who "has been sexually abused, or there is a substantial risk that the child will be sexually abused, . . . by his or her parent or guardian or a member of his or her household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse."

"While evidence of past conduct may be probative of current conditions, the question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824.) "[S]ection 300 does not require that a child actually be abused or neglected before the juvenile court can assume jurisdiction. [Section 300, subdivisions (b) and (d)] require[s] only a 'substantial risk' that the child will be abused or neglected. The legislatively declared purpose of [section 300] 'is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children *who are at risk of that harm*.' (§ 300.2, italics added.) 'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' [Citation.]" (*In re I.J., supra,* 56 Cal.4th at p. 773.)

"[T]he court may . . . consider past events when determining whether a child presently needs the juvenile court's protection. . . . A parent's past conduct is a good predictor of future behavior. [Citation.] 'Facts supporting allegations that a child is one described by section 300 are cumulative.' [Citation.] Thus, the court 'must consider all the circumstances affecting the child, wherever they occur.' [Citation.]" (*In re T.V.* (2013) 217 Cal.App.4th 126, 133.)

In section 355.1, the legislature has determined that sexual abuse of a child of one gender, without more, supports a dependency finding concerning a child of the other gender. (*In re I.J.*, *supra*, 56 Cal.4th at pp. 770, 779 [prolonged and egregious sexual abuse of daughter may provide substantial evidence of a finding the sons come within juvenile court jurisdiction, even when there is no evidence father sexually abused the sons].) "Section 355.1, subdivision (d), provides that a prior finding of sexual abuse (of anyone, not just a sibling) is prima facie evidence that the child who is the subject of the dependency hearing is subject to the court's

jurisdiction under section 300. When it enacted subdivision (d) of section 355.1, the Legislature found 'that children of the State of California are placed at risk when permitted contact with a parent or caretaker who has committed a sex crime. Further, the Legislature finds that children subject to juvenile court dependency jurisdiction based on allegations of molestation are in need of protection from those persons.' (Stats. 1999, ch. 417, § 1, p. 2780.) Nothing in this subdivision suggests it is limited to sexual abuse of a person of the same gender as the child before the court." (*In re I.J., supra,* at p. 779.)

Substantial evidence supports the finding. Mother was not aware Walter was abusing D. even though the abuse occurred in the home on numerous occasions over a period of time. It may be inferred from the fact D. acted out sexually at school that he was showing signs of the abuse at home, as well, which mother did not recognize. Mother participated in therapy to raise awareness of sexual abuse and create emotional support for D., yet she did not accept that Walter was the perpetrator even though D. was consistent and never recanted. Moreover, she continued her romantic and business relationship with Walter, allowed him to participate in family activities and sleep in the house, and gave him access to the children, even though this ongoing involvement made D. feel hurt and confused. Mother refused to acknowledge the harm her conduct caused D. and D.'s siblings, teaching them that abuse by a family or household member is acceptable and such person is to be trusted. The foregoing is substantial evidence mother was unrehabilitated and, thus, she continued to present a risk to the children from failure to protect. She presents this risk to her children, including her daughters, whether it is Walter or someone else she becomes involved with who seeks to victimize the children.

In any event, substantial evidence supports a finding that daughters risked being sexually abused by Walter. Walter resisted the restrictions placed on his contact with the children, and his goal was to resume being part of the family.

7

Mother still loved him and did not believe he had done anything wrong. Mother gave him access to daughters. This is substantial evidence that, if given the chance, Walter would again become part of the household, with access to daughters. Daughters trusted him. They saw that he made mother happy and that mother wanted him to be part of the family. They underreported the amount of contact they had with him. This is substantial evidence of a risk that, if Walter molested them, the daughters would minimize it and fail to protect themselves. Walter had a sexual history with members of his family or household, both males and females, who trusted him. This is substantial evidence daughters were at risk he would have a sexual interest in them. His abuse of D. was prolonged and egregious. All of the foregoing is substantial evidence daughters were at risk of being sexually molested by Walter. (See *In re I.J.*, *supra*, 56 Cal.4th at p. 770.)

Mother reargues the evidence and asks us to reweigh it. This we will not do. Our role is to determine whether substantial evidence supports the finding. In this case, ample substantial evidence supports the finding of jurisdiction over daughters.

*Abuse of discretion.*

Mother contends the judgment declaring daughters dependents of the court was an abuse of discretion in that the court should have disposed of the case by ordering a voluntary services contract.[5] By failing to object in the court below, mother forfeited the contention.

---

[5] " 'The juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accordance with this discretion. [Citations.] The court's determination in this regard will not be reversed absent a clear abuse of discretion.' [Citation.]" (*In re Corrine W.* (2009) 45 Cal.4th 522, 532.)

On August 2, 2013, mother requested, and the court ordered, an assessment of the possibility of disposing of the case with a voluntary services contract under section 360, subdivision (b) instead of with a declaration of dependency under section 300, subdivision (d).[6] After preparing an assessment, the Department concluded a voluntary services contract was not appropriate and, at the October 16, 2013 hearing, recommended the children be declared dependents of the court. Mother did not object. She signed the case plan.

Objections not made in the trial court normally are forfeited. (E.g., *In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. omitted ["a reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. [Citation.] The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected."].) In juvenile cases, discretion to consider forfeited claims "must be exercised with special care . . . ." (*Ibid.*) "[T]he appellate court's discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue." (*Ibid.* [the forfeited issue involved interpretation of a statute and had divided the Courts of Appeal]; *In re M.R.* (2005) 132 Cal.App.4th 269, 272 [the forfeiture was excused in order to clarify a recent statutory amendment].)

---

[6]    Section 360 provides that, after making a finding a child comes within the jurisdiction of the juvenile court and "[a]fter receiving and considering the evidence on the proper disposition of the case, the juvenile court may enter judgment as follows: [¶] . . . [¶] (b) If the court finds that the child is a person described by Section 300, it may, without adjudicating the child a dependent child of the court, order that services be provided to keep the family together and place the child and the child's parent or guardian under the supervision of the social worker for a time period consistent with Section 301. [¶] . . . [¶] (d) If the court finds that the child is a person described by Section 300, it may order and adjudge the child to be a dependent child of the court."

As mother did not object in the juvenile court, she forfeited the contention. This is not the rare case involving the type of legal issue that compels us to overlook the forfeiture.

**DISPOSITION**

The judgment and orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KLEIN, P. J.


We concur:


KITCHING, J.


ALDRICH, J.